## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

ALBERT W. BLOCK, JR., ET AL.　　　　　CIVIL ACTION NO. 3:20-CV-01592

VERSUS　　　　　　　　　　　　　　　JUDGE TERRY A. DOUGHTY

REAL TIME RESOLUTIONS, INC.,　　　MAG. JUDGE KAYLA D. MCCLUSKY
ET AL.

### REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, are two Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief can be granted, one filed by each Defendant:  Capital One. N.A. [doc. # 18] and Real Time Resolutions, Inc. [doc. # 27].  The motions are opposed.  For reasons assigned below, it is recommended that the motions to dismiss be GRANTED.

### Background

On December 8, 2020, Plaintiffs Albert W. Block, Jr. ("Block") and Claudia Ann Marlette Block filed the instant complaint against Defendants, Capital One. N.A. ("Capital One") and Real Time Resolutions, Inc. ("RTR") to recover compensatory and punitive damages, plus attorney's fees, that they sustained as a result of Defendants' alleged violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. (the "FCRA"), and the Fair Debt Collection Practices Act, 15, U.S.C. §§ 1692, *et seq*. (the "FDCPA").  (Compl.).[1]  Plaintiffs filed an amended complaint on January 29, 2021, which did not adopt or incorporate by reference the initial

---

[1] Plaintiffs filed a related lawsuit against Equifax Information Services, L.L.C., on February 15, 2021.  *Block v. Equifax Information Services, L.L.C.*, Civ. Action No. 21-0393 (W.D. La.).

Block is an attorney who is representing himself and Claudia Block in both of these cases.

complaint.  [doc. # 6].  Therefore, the operative pleading in the case is the First Amended Complaint,[2] which for simplicity's sake the court will refer to as the "Complaint," or otherwise cite to as the "Compl."

Plaintiffs alleged that they formerly were domiciled in Ouachita Parish, Louisiana, at the time that they took out a home equity line of credit which was secured by their home.  (Compl., ¶¶ 4-6).[3]  The home equity loan constituted a "consumer loan for personal, family, or household purposes," and represents a debt that Defendant, RTR, purportedly has sought to collect.  *Id.*

On July 8, 2020, Plaintiff, Claudia Block, received notice from LifeLock that a derogatory comment referencing a "judgment in the amount of $100,000 had been reported on a credit reporting service."  *Id.*, ¶ 9.  Similarly, a credit report from Equifax revealed a "derogatory report" from RTR showing a remaining balance of $121,598.00 on a mortgage.  *Id.*

Plaintiffs contend that the derogatory report was based on a February 8, 2016 petition to enforce security interest filed by Capital One against Plaintiffs, i.e., *Capital One, N.A., v. Block*, No. 16-0932 (4th JDC for Ouachita Parish).  (Compl., ¶ 10, Exh. B, pgs. 10-17 [doc. # 6-2]). Plaintiffs alleged that a curator ad hoc was appointed for the absent defendants (i.e., them); the action purportedly was in rem only; the security interest was enforced by a judicial sale and satisfied from the proceeds of the sale; and, ultimately, an order of dismissal, *without prejudice*, was executed on July 20, 2016.  *Id.*, 10-15; Exh. B, pg. 17 [doc. # 6-2]).

---

[2] "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)).

[3] In January 2014, Plaintiffs severed their ties with Louisiana and moved to Austin, Texas.  *Id.*, at ¶ 7.

On July 10, 2020, Block sent a letter to RTR confirming a telephone conversation that he had had earlier that day with an RTR account representative.  (Compl., Exh. B, pg. 5 [doc. # 6-2]).  The representative advised Block that RTR was acting as a third-party collector on behalf of the creditor, Capital One.  *Id*.  RTR had received the account from Capital One on September 21, 2018, for the original amount of $100,525.  *Id*.  However, the account had been marked as "charged off" on June 13, 2020.  *Id*.

On August 6, 2020, Block sent a certified letter to RTR advising the company that it had violated the FDCPA and that he was offering the firm an opportunity to redress the violation. (Compl., ¶ 16; Exh. B, pgs. 3-4 [doc. # 6-2]).  Block asserted that the purported "debt" did not exist because he and his wife were not personally liable for the debt.  *Id*.  He further explained that Capital One held a second mortgage on the Blocks' home pursuant to a home equity line of credit, but Capital One had initiated an in rem action against them which could result only in a judgment against the real estate without any personal liability against the Blocks.  *Id*.  Block added that no money judgment had been entered against them, and, therefore, there was no personal liability to be referred for collection.  *Id*.  Block demanded a full retraction of the "erroneous derogatory report" because there was no debt due.  *Id*.  He emphasized that this was not a disputed debt and that full retraction and removal of the report was the minimum, acceptable response.  *Id*.  Block threatened legal action against RTR if it attempted to redress this issue by marking the debt as "disputed."  *Id*.  "Anything short of a complete retraction and correction is not acceptable."  *Id*.

On November 23, 2020, Block sent a certified letter to Equifax Information Services, L.L.C. ("Equifax") wherein he notified Equifax that RTR had reported an erroneous debt, which

was appearing on the Blocks' credit report as an unpaid balance of $121,598. (Compl., Exh. C, pgs. 3-5 [doc. # 6-4]). He stressed that his letter was a not a "dispute" letter because there was no dispute. *Id*. Block stated that the debt was being reported allegedly as a result of litigation: *Capital One v. Block* (4th JDC 2015). *Id*. He explained that the litigation had been dismissed, no judgment had been entered against him or his wife, and there was no debt. *Id*. Block advised Equifax to consult with legal counsel if it doubted the validity of his own legal assessment. *Id*. He further notified Equifax of the total invalidity of the debt and called upon Equifax to delete the debt entirely. *Id*.

On December 23, 2020, Block received a reply from Equifax indicating that 1) the account was not marked as disputed, and 2) "[w]e have verified that this item has been reported correctly." (Compl., ¶ 20). However, according to December 10, 2020 correspondence that Equifax had sent to Claudia Block, the firm stated that information Ms. Block had disputed had been verified as accurate, but that information unrelated to the dispute had been updated. (Compl., Exh. E [doc. # 6-5]). Equifax indicated that the type of loan from Capital One was a "Home Equity Line of Credit," and that the type of account was a "Line of Credit." *Id*. Equifax noted that the account had been transferred/sold, but that the status of the loan was characterized as a "Charge Off." *Id*. The date of the first delinquency was July 2015, but the date of the last payment was November 2016. *Id*. Equifax added that if Ms. Block had any more questions about this account, she should contact Capital One. *Id*.

Plaintiffs contend that RTR violated the FCRA and the FDCPA as a result of RTR's willful refusal to remove the false derogatory report after having received clear proof that there was no lawful or enforceable debt. (Compl. ¶ 21). Plaintiffs further assert that Capital One

violated the FCRA when it willfully referred a non-existent debt for collection with the full knowledge that the collection action would include the posting of a false derogatory report "as to the underlying state court action." *Id*.

Plaintiffs divided their FCRA claim into four counts. First, Plaintiffs asserted that Defendants violated 15 U.S.C. § 1681s-2(a)(2) by furnishing incomplete or inaccurate information to a consumer reporting agency information and by failing to promptly notify the consumer reporting agency of corrections or additions to make the information complete and accurate. (Compl., ¶¶ 25-35).

Second, RTR violated § 623(a)(3) of the FCRA (codified as 15 U.S.C. § 1681s-2(a)(3)) when, despite notice that the debt was nonexistent, it failed to notify the consumer reporting agency that the debt was disputed. (Compl., ¶¶ 36-37).

Third, RTR violated § 611(a)(2)(A) of the FCRA (codified as 15 U.S.C. § 1681(i) when it had a second opportunity to remove erroneous and inaccurate information that it had furnished to Equifax, but still failed to do so. (Compl., ¶¶ 38-40).

Fourth, Defendants violated § 623(a)(7) of the FCRA (codified as 15 U.S.C. §§ 1681s-2(a)(1)(A) and 1681s-2(a)(7)) when they failed to timely disclose (within 30 days) to Plaintiffs (as consumers) that they had disclosed negative information about them to a credit reporting agency.

Plaintiffs further alleged that RTR violated the FDCPA when it failed to correct the derogatory credit report after notice by the consumer and proof that the debt sought to be collected was not debt. (Compl., ¶¶ 45-51). Plaintiffs also contend that Defendant, Capital One, is a furnisher of information under the FCRA and is responsible for the referral of the alleged

debt to RTR with full knowledge as a step in the collection process that a derogatory report as to a "dismissed judgment" would be reported.  Consequently, Capital One, too, is answerable for damages.  *Id.*, ¶ 51.

On March 9, 2021, Defendant, Capital One, file the instant motion to dismiss for failure to state a claim upon which relief can be granted.  [doc. # 18].  Capital One attached to its motion non-certified copies of various state court records, which flesh out more of the details of Plaintiffs' loans and the state court litigation referenced in Plaintiffs' complaint:[4]

1. On November 14, 2003, Plaintiffs executed a note in favor of Hibernia National Bank in the amount of $127,000 (the "2003 Note").  The 2003 Note was secured by a mortgage on Plaintiffs' real property located at 105 Arapaho Drive, West Monroe, Louisiana (the "Property").  The mortgage was recorded in the Ouachita Parish Records under Instrument No. 1390928 ("2003 Mortgage").

2. On June 3, 2005, Plaintiffs executed a Home Equity Line of Credit Agreement in favor of Hibernia National Bank with a credit limit of $100,000 (the "2005 HELOC").  The 2005 HELOC was also secured by the Property by way of a multiple indebtedness mortgage (the "2005 Mortgage"). The 2005 Mortgage was recorded in the Ouachita Parish Records under Instrument No. 1435937.

3. On February 8, 2016, Capital One, N.A. filed an action styled *Capital One, N.A. v. Albert W. Block, Jr., et al.*, Case No. 16-0392, in the Fourth District Court, Parish of Ouachita, State of Louisiana (the "Capital One Action") to enforce its security interest in the Property. *See* M/Dismiss, Exh. B.  In the Capital One Action, Capital One sought the principal sum of $100,000, plus interest.  *Id.*

4. On April 28, 2016, Ditech Financial LLC ("Ditech") – as the assignee of the 2003 Note and 2003 Mortgage – filed an action styled *Ditech Financial LLC v. Claudia Ann Marlette Block, et al.*, Case No. 16-1361, in the Fourth District Court, Parish of Ouachita, State of Louisiana (the "Ditech Action").  *See* M/Dismiss, Exh. A.  Capital One was not a party to the Ditech Action.  *Id.*  In the Ditech Action, Ditech sought a sum in excess of $101,000, plus interest, costs, and fees relating to the 2003 Mortgage.  *Id.*

---

[4] *See* Motion to Dismiss, Exhs.  [doc. # 18-1].  Plaintiffs agreed that it was permissible for the court to consider the state court suits in connection with the motion(s) to dismiss.  *See* Pl. Opp. Memo., pgs. 21-22 [doc. # 25].

6

5. On July 6, 2016, the Property was sold at a foreclosure sale by virtue of a judgment obtained by Ditech in the Ditech Action. On July 7, 2016, the Sheriff executed a writ directing the Clerk of Ouachita Parish to cancel the 2003 Mortgage and the 2005 Mortgage. *Id.*

6. According to records filed in the Ditech Action, the Property was sold for the total sum of $155,000. Of that amount, approximately $5,700 was used to pay court costs, and $117,771.72 was paid to Ditech's attorneys to pay off the 2003 Note and satisfy the 2003 Mortgage. The remainder of the funds (totaling $31,468.06) were deposited into the state court's registry. *Id.*

7. On July 20, 2016, Capital One moved to dismiss the Capital One Action, and it was dismissed without prejudice. *See* Doc. 6-1, p. 21.

(M/Dismiss, Memo., pgs. 3-4).

Capital One seeks dismissal of Plaintiffs' claims on several grounds. First, Capital One emphasizes that the 2005 debt that forms the basis for this lawsuit was never paid off or otherwise extinguished, and, therefore, remains valid. Furthermore, Plaintiffs' FCRA claim against Capital One fails because it does not arise out of any information furnished by Capital One to the credit reporting agencies ("CRAs"). In addition, Capital One argues that Plaintiffs' FDCPA claims are subject to dismissal because they are time-barred, and because the FDCPA applies only to debt collectors -- not original creditors like Capital One.

On March 24, 2021, Plaintiffs filed a 40-page response in opposition to Capital One's motion to dismiss, wherein they made numerous points, arguments, and concessions. (Pl. Reply [doc. # 25]). In so doing, Plaintiffs spilled a lot of ink to show that the Capital One Action did not result in a personal judgment against them. However, in a deft change of tack, Plaintiffs for the first time asserted that the 2005 HELOC, i.e., the debt that forms the basis for their present claims, is prescribed. Plaintiffs pointed out that the promissory note was dated June 3, 2005,

7

with a maturity date of June 15, 2015, and consequently, the note prescribed five years later, on June 15, 2020, in accordance with Louisiana law.

Plaintiffs contend that Capital One has taken the position that it has an enforceable promissory note for the original sum of $100,000. Furthermore, Capital One purportedly referred or sold the judgment of dismissal as an enforceable cause of action. According to Plaintiffs, Capital One is the furnisher of information under the FCRA because it transferred the debt to RTR for the purpose of debt collection, which subsequently included derogatory credit reporting as part of the debt collection process. Plaintiffs maintain that the information reported to Equifax was false because there no longer was a mortgage and the underlying note had prescribed. As the referring creditor, Capital One would have been asked to verify the validity of the promissory note as being enforceable. Because the promissory note was facially prescribed, Capital One's decision to report the debt as valid constituted a violation of the FCRA.

In their response, Plaintiffs further clarified that they had not alleged that Capital One had violated the FDCPA. (Pls. Reply Memo., pg. 30). Consistent with this representation, Plaintiffs conceded that Capital One was not a debt collector; rather, it was a referring creditor that had furnished derogatory and false information posted by RTR. *Id*., pg. 38. Moreover, as a furnisher of credit information, Capital One was liable under the FCRA for failure to adequately investigate the debt after receipt of notice of the disputed item by the CRA.

On March 31, 2021, Capital One filed its reply brief wherein it argued, *inter alia*, that the FCRA extends liability only to persons who furnish information to CRAs, not persons who furnish information to intermediaries, who, in turn, furnish information to CRAs. [doc. # 26].

On April 9, 2021, Defendant, RTR, filed its own motion to dismiss for failure to state a

claim upon which relief can be granted. [doc. # 27]. RTR argued that Plaintiffs' claims failed as a matter of law because the 2005 debt was not dismissed. RTR further asserted that there was no private right of action under 15 U.S.C. §§ 1681s-2a and/or 1681s-2(c). As to Plaintiffs' claim under § 611(a)(2)(a), codified as § 1681i, RTR asserted that the section imposed a duty on the consumer reporting agency – not the furnisher of information to the consumer reporting agency. Insofar as Plaintiffs intended to assert a claim under 15 U.S.C. § 1681s-2(b), RTR asserted that Plaintiffs failed to allege that RTR had received a dispute from a credit reporting agency. Regardless, RTR maintained that the 2005 debt had not been extinguished in any way. RTR further argued that Plaintiffs' claims under the FDCPA were subject to dismissal because a) the debt was not extinguished and still owed when reported; and b) an allegation that the debt was not owed is insufficient to support a claim under § 1692e.

On April 23, 2021, Plaintiffs again filed a repetitive and verbose 40+ page response to RTR's motion to dismiss, wherein they alleged that RTR began this entire claim by posting a derogatory report stating that RTR held a "judgment" for $128,587.00 against Plaintiffs for the remaining balance due on a mortgage. [doc. # 33].[5] Plaintiffs stated that their allegations were confirmed by an Equifax credit report that they had attached to their complaint which stated that there was a remaining balance due of $121,598.00 on a mortgage. (Pl. Opp. Brief, pgs. 6-7) (citing [doc. # 6-1, pg. 2]). Plaintiffs argued that by reporting an alleged debt to a credit reporting agency, RTR engaged in "collection activity" proscribed by § 1692g(b). Plaintiffs emphasized that, based on the pleadings and exhibits, RTR was unable to enforce the underlying

---

[5] Plaintiffs agreed that all documents attached to the motion to dismiss were publicly filed documents subject to judicial notice such that it was unnecessary to convert the motion to dismiss into a motion for summary judgment. (Pl. Opp. Brief, pg. 4).

promissory note, and, consequently, there was/is no debt.  (Pl. Opp. Memo., pg. 41).

On May 12, 2021, RTR filed its reply brief, wherein it argued that Plaintiffs' opposition memorandum impermissibly amounted to an amended complaint because it asserted facts and theories that were not included in the Complaint.  [doc. # 36].  Specifically, RTR noted Plaintiffs' new allegations that 1) the debt no longer was owed because it was time-barred, which RTR had failed to disclose thus disguising the true status of the debt; and 2)  RTR had received and responded to a dispute from Equifax.  Because these new allegations and theories were not included in the Complaint, RTR urged the court not to consider them.  In any event, RTR argued that the new allegations failed to save Plaintiffs' claims.  RTR emphasized that it never tried to collect on the debt in the court system, and, even according to the new allegations, did no more than report the debt, which is not prohibited.  RTR further asserted that Plaintiffs' own exhibits refuted their allegations that RTR had reported that a judgment had been rendered against Plaintiffs.  RTR accused Plaintiffs of critical oversight or attempts to intentionally mislead the court as to underlying facts.

Briefing is complete; the matter is ripe.

## Standard of Review

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ."  FED. R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 155 (5th Cir. 2010).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public and state

court records.  *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)

(citation omitted) (proper to take judicial notice of matters of public record); *Patterson v. Mobil*

*Oil Corp.*, 335 F.3d 476, 481 n.1 (5th Cir. 2003) (judicial notice of state court records).

Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part

of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim."

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and

internal quotation marks omitted).

## <u>Analysis</u>

### I.  **Fair Credit Reporting Act ("FCRA")**

Congress enacted the FCRA, 15 U.S.C. §§ 1681-1681x, in 1970 "to ensure fair and accurate

credit reporting, promote efficiency in the banking system, and protect consumer privacy."  *Safeco*

*Ins. Co. of Am. v. Burr*, 551 U.S. 47, 127 S.Ct. 2201, 2205 (2007) (citing *inter alia* 15 U.S.C. §

1681).  As pertinent here, the FCRA imposes a duty on "furnishers of information" to provide

accurate information to the credit reporting agencies (CRAs).  *Hall v. LVNV Funding, L.L.C.*, 738

Fed. App'x. 335, 336 (5th Cir. 2018) (citing § 1681s-2(a)).

In their Complaint, Plaintiffs grounded their FCRA claims exclusively upon alleged

violations of various provisions of § 1681s–2**(a)**, as well as 15 U.S.C. § 1681(i).   Numerous courts,

however, have recognized that the FRCA does not authorize a private right of action for violations of

§ 1681s-2(a).  *See Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34–35 (3d Cir. 2011); *Hanberry v.*

*Chrysler Capital*, Civ. Action No. 21-397, 2021 WL 1577840, at *4 (E.D. La. Apr. 22, 2021);

*Egwurube v. Discover Fin. Servs.*, Civ. Action No. 20-0292, 2021 WL 260769, at *2–4 (S.D. Tex.

Jan. 4, 2021), *R&R adopted*, 2021 WL 260216 (S.D. Tex. Jan. 26, 2021); *Coleman v. Devos*, Civ.

Action No. 19-2417, 2020 WL 9219408, at *4, n.10 (N.D. Tex. Dec. 28, 2020), *R&R adopted*, Civ. Action No. 19-2417, 2021 WL 1169149 (N.D. Tex. Mar. 29, 2021).

In addition, the duties imposed by § 1681(i) apply to consumer reporting agencies, not to furnishers of information. *See* 15 U.S.C. § 1681(i); *Egwurube v. Discover Fin. Servs.*, Civ. Action No. 20-0292, 2021 WL 260769, at *4 (S.D. Tex. Jan. 4, 2021), *R&R adopted*, 2021 WL 260216 (S.D. Tex. Jan. 26, 2021) (§ 1681i(a) imposes an obligation on a consumer reporting agency, not a furnisher). Here, Plaintiffs do not allege that Defendants are consumer reporting agencies, and, thus, they fail to state a claim against them under 15 U.S.C. § 1681(i). *See Egwurube, supra* (Because there are no allegations that defendant is a consumer reporting agency, this statutory claim has no application and must be dismissed). For these reasons alone, Plaintiffs' complaint fails to state a claim for relief under the FCRA.

However, in their memoranda filed in response to Defendants' motions, Plaintiffs, without explanation, abruptly changed tack and asserted that Defendants violated § 1681s–2**(b)**. In contrast to § 1681s–2*(a)*, the Fifth Circuit has recognized that there *is* a private cause of action under the FCRA for violations of § 1681s-2*(b)*: "'[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable' for actual damages, court costs, and attorney's fees." *Hall*, 738 Fed. App'x at 336 (quoting 15 U.S.C. § 1681o(a)); *see also Jett v. Am. Home Mortg. Serv'g, Inc.*, 614 F. App'x 711, 713 (5th Cir. 2015).[6]

---

[6] Furthermore, "'[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer' for actual or statutory damages, and punitive damages as well as attorney's fees." *Hall, supra* (quoting 15 U.S.C. § 1681n(a)).

13

The undersigned notes that Plaintiffs' responses to the pending motions appear to be attempts to amend their complaint to set forth new avenues for relief, and to allege additional facts. The Fifth Circuit has recognized that when a claim is raised for the first time in response to a dispositive motion, the district court should construe the claim as a motion to amend the complaint under Rule 15(a) of the Federal Rules of Civil Procedure. *Riley v. Sch. Bd. Union Parish*, 379 F. App'x 335, 341 (5th Cir. 2010) (response to summary judgment motion) (citations omitted). Furthermore, "[d]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable . . ." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Rule 15(a) provides that a plaintiff may amend his complaint once as a matter of course within 21 days after service of the complaint itself, or within 21 days of the earlier of the filing of: 1) a responsive pleading or 2) a motion under Rule 12(b), (e), or (f) – whichever is earlier. FED. R. CIV. P. 15(a)(1)(A)-(B). In all other situations, a party may amend his pleading only with the opposing party's written consent, or the court's leave, which should be granted freely when justice so requires. FED. R. CIV. P. 15(a)(2).

Here, Plaintiffs already have amended their complaint once; Defendants have not consented in writing to Plaintiffs' amendment; and therefore, Plaintiffs' stealth amendment may be effected only with leave of court. Although a district court should grant leave to amend freely, the court, nonetheless, may deny leave to amend if the proposed amendment is futile. *United States v. Gonzalez*, 592 F.3d 675, 681 (5th Cir. 2009) (citations omitted). In the Rule 15 context, an amendment is futile if it "would fail to state a claim for relief upon which relief could be granted." *Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). In this instance, even

14

after considering Plaintiffs' proposed amendment(s), disguised as response briefs, Plaintiffs still fail

to state a claim for relief.

Under § 1681s-2(b),

[i]f a CRA notifies a furnisher of credit information that a consumer disputes the reported information, the furnisher must conduct an investigation with respect to the disputed information, review all relevant information provided by the [CRA], report the results of the investigation to the [CRA], and modify . . . delete . . . or . . . permanently block the reporting of [any disputed item of information that is found to be inaccurate, incomplete, or unable to be verified].

*Hall, supra* (citing § 1681s-2(b)(1)(A)-(E)) (internal quotation marks omitted).[7]

To recover against a furnisher for an alleged violation of § 1681s–2(b), a plaintiff must show

that:  (1) the furnisher provided incomplete or inaccurate credit information about plaintiff to a CRA;

---

[7]  Specifically, § 1681s-2(b) imposes the following duties on "furnishers," i.e., sources that provide credit information to credit reporting agencies:

**(1) In general**
After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
**(A)** conduct an investigation with respect to the disputed information;
**(B)** review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
**(C)** report the results of the investigation to the consumer reporting agency;
**(D)** if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
**(E)** if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
**(i)** modify that item of information;
**(ii)** delete that item of information; or
**(iii)** permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

(2) plaintiff notified a CRA that this information in his or her credit report was inaccurate or incomplete; (3) the CRA notified the furnisher of the dispute; and (4) after receiving this notice, the furnisher failed to conduct a reasonable investigation, correct any inaccuracies, or negligently reported the results of its investigation to the CRA. *See Schoch v. Wells Fargo Home Mortgage*, Civ. Action No. 16-0619, 2017 WL 2385626, at *4 (E.D. Tex. Apr. 11, 2017), *R&R adopted,* 2017 WL 2312079 (E.D. Tex. May 26, 2017); *Egwurube, supra* (citation omitted); *Jett, supra*.

Defendants contend that Plaintiffs failed to allege requisite facts to support several elements of their FCRA claim.  Initially, Capital One argued that it does not qualify as a "furnisher" under the FCRA because it did not provide any information to a CRA about Plaintiffs at all, rather RTR did. *See* Equifax Credit Report (referencing a debt reported by RTR); Compl., Exh. A.   In response, Plaintiffs reasoned that Capital One was a "furnisher" because it provided or referred their credit information to RTR, who, *in turn*, reported it to a CRA.  Plaintiffs, however, did not provide any binding authority to support this agency or "cat's paw" basis for "furnisher" liability under the FCRA. Furthermore, the regulations define a furnisher as "an entity that furnishes information relating to consumers *to* one or more *consumer reporting agencies* for inclusion in a consumer report." 12 C.F.R. § 1022.41(c) (emphasis added).  There is no indication that the implementing regulations (or the statute itself) contemplate liability against an upstream entity for providing credit information about an individual to another entity that actually and directly furnished that information to a CRA.  In addition, Plaintiffs have not alleged any facts to plausibly suggest that Capital One and RTR acted in concert.

At an even more basic level, however, is whether either Defendant provided any incomplete or inaccurate credit information about Plaintiffs to a CRA at all.  In their Complaint, Plaintiffs

16

alleged that Defendants reported to a CRA that Plaintiffs were subject to a $100,000 "judgment." *See* Compl., ¶ 9.  To support this allegation, Plaintiffs attached a copy of a credit report from Equifax that showed a "mortgage" with a balance of $121,598.00.  (Equifax Credit Report; Compl., Exh. A). Conspicuously absent from the report, however, is any mention of a "judgment."  *Id.*   When, as here, an allegation in the complaint is contradicted by an exhibit attached to the pleading, then the exhibit controls. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citation omitted).[8]

Even if Plaintiffs' credit report *had* included a reference to this mystery "judgment," it is manifest that, by December 2020, any such reference had been removed from Plaintiffs' credit report after Plaintiffs complained to Equifax, and Equifax asked the reporting company to verify the accuracy of the information that Plaintiffs had disputed.  *See* Dec. 10, 2020 Letter from Equifax to Claudia Block; Compl, Exh. E.

Instead, in response to Defendants' motions, Plaintiffs shifted the focus of their FCRA claim to Defendants' alleged failure to report the 2005 debt as time-barred, and, thus, unenforceable.  To be sure, in the context of the FDCPA, the Fifth Circuit has held that, "[w]hether a debt is legally enforceable is a central fact about the character and legal status of that debt.  A misrepresentation about that fact thus violates the FDCPA."  *Manuel v. Merchants & Prof'l Bureau, Inc.*, 956 F.3d 822, 829 (5th Cir. 2020) (quoted and cited sources omitted).  However, there is no indication that the Fifth Circuit has extended this principle to the FCRA.

---

[8]  "While we typically must accept all of plaintiff's allegations of fact as true, we decline to do so where his own attachment contradicts those allegations."  *Lehman v. Guinn*, Civ. Action No. 20-CV-0736, 2021 WL 935887, at *5 (W.D. La. Feb. 9, 2021), *R&R adopted,* 2021 WL 929885 (W.D. La. Mar. 10, 2021) (citations omitted).

In this case, even accepting Plaintiffs' contention that the 2005 debt is time-barred, Louisiana law provides that the running of liberative prescription bars the action,[9] but does not extinguish the underlying obligation. *Orleans Par. Sch. Bd. v. U.S. Gypsum Co.*, 892 F. Supp. 794, 807 (E.D. La. 1995), *aff'd sub nom. Orleans Par. Sch. Bd. v. Asbestos Corp. Ltd.*, 114 F.3d 66 (5th Cir. 1997) (citing *Louisiana Health Serv. & Indem. Co. v. Tarver*, 635 So.2d 1090, 1097 (La. 1994) and LA. CIV. CODE ART. 3447 ("[l]iberative prescription is a mode of *barring* of actions as a result of inaction for a period of time."). Under these circumstances, other courts have held that there is no FCRA violation for reporting a time-barred debt that otherwise is unenforceable, but not extinguished. *See, e.g.*, *Tshai Budhi v. BAC Home Loans Servicing, L.P.*, Civ. Action No. 11-2785, 2012 WL 1677253, at *6 (N.D. Ga. Apr. 16, 2012), *R&R adopted*, 2012 WL 1677247 (N.D. Ga. May 11, 2012); *Barsky v. Experian Info. Sols., Inc*, Civ. Action No. 15-1017, 2016 WL 4538526, at *2 (E.D. Mo. Aug. 30, 2016) ("whether a debt is enforceable is a matter of law that can only be resolved in court."). In fact, a "reasonable reinvestigation does not require CRAs to resolve legal disputes about the validity of the underlying debts they report." *Solus v. Regions Bank*, Civ. Action No. 19-2650, 2020 WL 4048062, at *4 (N.D. Ga. July 17, 2020) (citations omitted); *see also Barsky, supra* (whether a debt is enforceable is a matter of law that can only be resolved in court).[10]

---

[9] The underlying home equity line of credit agreement specified that it was governed by Louisiana law. Louisiana has a five-year liberative prescription period for notes, which normally runs from the day payment is exigible, but runs as to the whole note from the date the note was accelerated. *Wells Fargo Bank v. Washington*, 282 So.3d 1176, 1179 (La. App. 4th Cir. 2019); *writ denied sub nom. Wells Fargo Bank, N.A. as Tr. for Option One Mortgage Loan Tr. 2000-C, Asset-Backed Certificates, Series 2000-C v. Washington*, 291 So.3d 1039 (La. 2020).

[10] In *Chiang v. Verizon New England Inc.*, the First Circuit emphasized that just as in FCRA suits against CRAs a plaintiff's suit against a furnisher requires plaintiff to show a factual inaccuracy in the information reported, rather than the existence of a disputed legal question. *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37–38 (1st Cir.2010) (citation omitted).

18

Furthermore, even if RTR's reporting of the 2005 debt to the CRA without disclosing that it was time-barred constitutes incomplete or inaccurate information,[11] it is manifest that the scope of the furnisher's duty to conduct a reasonable investigation is bounded by the nature of the consumer's challenge to the reported debt that the furnisher receives from the CRA. *Chiang, supra.* "Accordingly, the central inquiry when assessing a consumer's claim under § 1681s–2(b) is 'whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute.'" *Chiang*, 595 F.3d at *38 (citing *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009)); *Hernandez v. Specialized Loan Servicing LLC*, 836 Fed. App'x. 480, 483 (9th Cir. 2020) (same). The court reiterates that after notice of a dispute from the CRA, the furnisher is required to investigate the *disputed information*, review the *information provided by the CRA*, and then report the results of the investigation to the CRA. 15 U.S.C. § 1681s-2(b)(1).

Here, Plaintiffs' Complaint did not allege that they notified the CRA that the 2005 debt was time-barred, or that the CRA provided Defendants with notice of this particular basis for the dispute. Moreover, even after looking at the exhibits attached to the Complaint to shore up the pleading gaps, it is clear that Plaintiffs did not notify Defendants or the CRA (Equifax) that they believed their credit information was incomplete or inaccurate because the debt was time-barred. Rather, the sole focus of their challenge was that there was no personal "judgment" entered against them. While the court certainly may glean from Equifax's December 10, 2020 letter to Plaintiffs that Equifax asked a "reporting company" (presumably either RTR and/or Capital One) to verify the information that

---

[11] Capital One cannot be liable under Plaintiffs' "but for" theory of derivative or vicarious liability for the reporting of the prescribed debt because the five-year prescriptive period had not yet run in 2018 when Capital One referred the debt to RTR.

Plaintiffs had disputed, it is pellucid that the precipitating issue Plaintiffs raised with Equifax did *not* include Plaintiffs' contention that the 2005 debt was time-barred.  *See* Nov. 23, 2020 Letter from A. Block to Equifax; Compl., Exh. D [doc. # 6-4] (complaining about the phantom "judgment").

Given Plaintiffs' patent failure to raise their prescription argument with the CRA/Equifax, and, therefore, the concomitant impossibility that the CRA forwarded the prescription issue to the reporting company, i.e., either Defendant in this case, it not plausible that Defendants breached any obligation to reasonably investigate a legal matter for which they did not receive notice.[12]  *See Tshai Budhi*, *supra*.

Furthermore, Equifax's December 10, 2020 letter to Plaintiffs plainly demonstrates that the reporting company Equifax contacted about the debt did not simply ignore the inquiry.  Rather, Equifax's letter to Plaintiffs confirms that the reporting company investigated the account and forwarded several corrections to Equifax, including that the type of loan was a home equity line of credit, that had been "charged off," with the "collateral released." (Compl., Exh. E [doc. # 6-5]). The investigation revealed that the account had been transferred/sold, and the account closed in February 2018.  *Id*.  Moreover, Plaintiffs do not contest that they incurred the debt and have failed to make payments due on the loan for some time.

In sum, upon review of the Complaint, as amended, the exhibits attached thereto, and Plaintiffs' attempt to further amend the Complaint in their response briefs, the court finds that Plaintiffs have failed to state a plausible claim for relief under FCRA against Defendants.

---

[12] It is also worth noting that in their letters to Equifax and RTR, Plaintiffs did not want the debt marked as disputed; rather, they wanted a full retraction, including deletion of the debt from their credit report.  *See* Compl., Exhs. B & D.

II.     **Fair Debt Collections Practices Act ("FDCPA")**

Congress enacted the FDCPA in an effort to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Any debt collector who fails to comply with the FDCPA's provisions is civilly liable for actual damages sustained by the individual debtor, additional damages not greater than $1,000, plus costs and reasonable attorney's fees. 15 U.S.C. § 1692k(a).

To prevail under the FDCPA, a plaintiff must show that: "(1) [he has] been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Johnson v. Attorney Office of Newman, Mathis, Brady & Spedale*, Civ. Action No. 12-706, 2013 WL 6834381 (M.D. La. Dec. 23, 2013) (citation omitted); *Douglas v. Select Portfolio Servicing, Inc.*, CIV.A. 4:14-1329, 2015 WL 1064623, at *4 (S.D. Tex. Mar. 11, 2015) (same).

However, even assuming *arguendo* (as the Fifth Circuit has done) that reporting a debt to a credit agency may be considered an activity "in connection with the collection of [a] debt," a plaintiff also must allege facts to show that he either received a demand letter or communication from the defendant or otherwise identify evidence that the defendant reported the debt as a means to collect on the debts. *Billups v. Retail Merchants Ass'n, Inc.*, 620 Fed. App'x. 211, 214 (5th Cir. 2015). Here, Plaintiffs' Complaint and response briefs are devoid of any such facts or evidence, and, consequently, fail to plausibly allege that the purpose of RTR's[13] reporting the debt to the credit

_____

[13]As noted, Plaintiffs conceded that Defendant, Capital One, was not a debt collector and that

21

agency was a means to motivate him to pay the debt.  *Id.*; *Tubwell v. Specialized Loan Serv. LLC*, Civ. Action No. 17-0015, 2017 WL 4228760, at *7 (N.D. Miss. Sept. 22, 2017) (citing *Billups, supra*).  Consequently, Plaintiffs' FDCPA claim necessarily fails.

## Conclusion

As instructed by *Iqbal*, the court has accorded no weight to the conclusory allegations set forth in Plaintiffs' Complaint.  *See Iqbal, supra*.  Furthermore, the remaining allegations do not permit the court to draw the reasonable inference that Defendants are liable for the misconduct alleged.[14]  Furthermore, the Complaint certainly does not include enough factual allegations to raise the reasonable expectation that discovery will reveal evidence to support the elements of the claims.  *Twombly, supra*.[15]  Accordingly,

IT IS RECOMMENDED that Defendants' motions to dismiss for failure to state a claim upon which relief can be granted [doc. #s 18 & 27] be GRANTED, and that Plaintiffs' claims be DISMISSED, WITH PREJUDICE, in their entirety.  FED. R. CIV. P. 12(b)(6).[16]

---

they did not alleged that it had violated the FDCPA.  (Pls. Reply Memo., pg. 30).

[14] The undersigned's recommended disposition of the pending motions in favor of the Movants obviates the need to address any remaining grounds urged by Defendants.

[15] Typically, before dismissal, the court should accord a plaintiff the opportunity to amend his complaint to state a claim for relief.  Here, however, Plaintiffs already formally amended their complaint once and informally endeavored to amend it again in their responses to Defendants' motions.  At this juncture, the court is not confident that Plaintiffs possess any additional information to support their claims, and thus further amendment would prove futile.

[16]  To the extent that the undersigned has expanded upon the grounds for dismissal urged by movants, the instant report and recommendation provides adequate notice to the parties.  *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties).  In any event, the court possesses the inherent authority to dismiss a party sua sponte.  *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 1995

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party=s objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 8th day of June, 2021.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

---

WL 534901 (5th Cir. 1995) (unpubl.) (the district court sua sponte dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer).

23